UNITED STATES BANKRUPTCY COURT
FOR THE
DISTRICT OF MASSACHUSETTS

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

In re
**NICHOLAS LAUDANI,**            Chapter 13
    Debtor            Case No. 13-12362-JNF

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

**NICHOLAS LAUDANI,**
    Plaintiff
v.            Adv. P. No. 16-1148
**MANHATTAN FINANCIAL SERVICES, INC.,**
**and ROBERT J. WALSH,**
    Defendants

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

**MEMORANDUM**

**I. INTRODUCTION**

The matter before the Court is the Amended Complaint filed by Nicholas Laudani (the "Plaintiff" or the "Debtor") against Manhattan Financial Services, Inc. ("MFS") and Robert J. Walsh ("Walsh") (collectively, the "Defendants"). Through his Complaint, the Plaintiff "applies to the Court for supplementary process pursuant to Mass. Gen. Laws Ch. 224, § 14 et seq., made applicable in this court pursuant to Fed. R. Civ. P. 69."[1] The Plaintiff seeks to satisfy a default judgment he obtained against MFS in an adversary proceeding (Adv. P. N. 07-1433) he commenced in a prior bankruptcy case (Case No. 07-15355-JNF).

---

[1] Fed. R. Bankr. P. 7069 makes Fed. R. Civ. P. 69 applicable in adversary proceedings.

1

The Plaintiff set forth two counts in his Amended Complaint: Count I – Piercing the Corporate Veil, and Count II – Action on a Judgment. Walsh answered the Complaint. MFS did not. In sum, the Plaintiff seeks to hold Walsh liable for the amount of the default judgment he obtained against MFS. Although the Plaintiff named MFS as a defendant, he did not seek any relief against it.

The Court conducted a trial on March 11, 2019 at which the Debtor and Walsh testified and three exhibits were introduced into evidence.[2] At the conclusion of the evidence, the Defendant moved for a directed verdict, supported by a "Motion for a Judgment on Partial Findings" which he filed in open court. The Court afforded the Plaintiff an opportunity to file an opposition to the motion. For the reasons set forth below, the Court shall enter an order granting the motion and entering judgment for the Defendants.

**II. FACTS**

Laudani testified that he has resided at 29 Beech Glen Street in the Roxbury neighborhood of Boston, Massachusetts for approximately 30 years. While working as a loan officer for Mortgage Pros in 2005, he contacted Walsh about refinancing his property. He described the process as follows:

> I kept asking for what was called a good-faith estimate, so I could figure out whether I should do this loan or not. And I kept getting incomplete -- like a 1003, which is a four-page application for the loan -- I kept getting incomplete 1003 applications and conflicting reports and never really got full appropriate paperwork, never. Which I never did as a loan officer. I always made sure I gave people their thirty-day-in-advance good-faith estimate.

---

[2] The Defendant waived his jury trial demand at the commencement of the trial.

> Even at the closing, it was the most insane closing I've ever -- and I've done a lot of closings. I had three different good-faith estimates -- three -- I'm sorry, three different HUD statements, which I forget the acronym what it's for, but basically it was the final summary of all the charges. They were -- all three of them were drastically different.
>
> And I had to sign it. Because the other funny thing about this deal was coincidentally, they scheduled the refi to be an exact day that I was scheduled to be foreclosed upon, and Mr. Walsh told me don't worry, don't worry, don't – all this went on for months, and we wait to the very day. And I should have had that -- basically I remember signing a deal that I did not understand or did -- even as a loan officer, did not understand. And I was told I was going to get cash back, which did not happen.  I was told from anywhere, depending on which document you want to find from 25- to $60,000, cash back. I ended up getting, I think $140 back.

The Debtor concluded that he was worse off than when he started the refinancing process, stating:  "I trusted that even though the paperwork wasn't right that they'd make it right, because that's the way I used to do it."

The Debtor testified that in his prior Chapter 13 case, which was converted to a case under Chapter 7, he filed a Verified Complaint against Tribeca Lending Corporation, Franklin Credit Management Corporation, and MFS for, inter alia, breach of contract and violation of the Truth in Lending Act (TILA), the Massachusetts Consumer Credit Cost Disclosure Act (MCCCDA), the Home Owners Equity Protection Act (HOEPA), and the Massachusetts Predatory Home Loan Practices Act in connection with a home loan refinancing transaction.  *See* <u>Laudani v. Tribeca Lending Corp. (In re Laudani)</u>, 401 B.R. 9 (Bankr. D. Mass. 2009).  Laudani affirmed his belief in the truth and accuracy of the allegations made in the Verified Complaint.

Mary Ann Walsh, in her capacity as a "Compliance Officer," purportedly filed an answer on behalf of MFS in Adv. P. No. 07-1433. The answer was filed on letterhead that provided the following address for MFS: 411 Main Street, P.O. Box 241, West Yarmouth, MA 02673. In addition to listing a Massachusetts Brokers License Number, telephone and fax numbers, the caption contained the following description of services:

> Residential
> Commercial/Hard Money

The Debtor eventually settled with Tribeca Lending Corporation and Franklin Credit Management Corporation. On October 30, 2010, Laudani moved for a default judgment against MFS because, as a corporation, it was required to appear through counsel, *see* MLBR 9010-1(c), and thus it failed to answer the Verified Complaint. He set forth the following in his motion:

> In essence, Laudani alleged in his Verified Complaint that Manhattan Financial was a mortgage broker that got him into a mortgage refinancing that was beyond his capacity to pay and did not otherwise conform to his needs. The Court did not necessarily accept all of his allegations, but nonetheless refused to dismiss the complaint in its entirety as to the non-‐-defaulting defendants.
>
> The memorandum describes Manhattan's participation in the refinancing, which Laudani adopts for purposes of this motion.
>
> In connection with the summary judgment motion, the non-‐-defaulting defendants submitted an affidavit of Bruce Miller, the closing attorney. Attached to his affidavit, at page 8, is a copy of the closing statement. It indicates that Laudani paid closing costs of $24,156.27, including $11,413.50 in fees paid to Manhattan Financial (lines 806 to 811).
>
> Laudani therefore avers that his damages as to Manhattan Financial are $11,413.50.

> In the complaint, Laudani included a count under chapter 93A of the General Laws of Massachusetts. This count was not considered in the summary judgment motion and remains viable. Laudani therefore requests that the foregoing damages be trebled in accordance with the statute.
>
> WHEREFORE Laudani requests judgment against Manhattan Financial in the amount of $45,654 [sic], and that the clerk be directed to issue an execution forthwith.[3]

On December 6, 2010, the Court entered a default judgment in favor of Laudani and against MFS in the amount of $34,240.50. Thereafter, the clerk issued a Writ of Execution in that amount.

Walsh testified that he resided at 37 Traders Lane in West Yarmouth, Massachusetts, had never lived in Arlington, Massachusetts, and had never filed a bankruptcy petition.[4] Although he did not attend college, Walsh testified that he became involved in finance when he was sponsored to join an investment group. He stated that MFS was incorporated in 1978 "with a couple of other people." Walsh indicated that he invested in the company but MFS had limited assets owing to the nature of its business, mostly computers, telephones, and office equipment. Walsh was the sole officer and director of MFS and in its annual report for 2001, he was

---

[3] The Court may take judicial notice of its own docket. *See* LeBlanc v. Salem (In re Mailman Steam Carpet Cleaning Corp.), 196 F.3d 1, 8 (1st Cir. 1999) ("The bankruptcy court appropriately took judicial notice of its own docket.").

[4] The Plaintiff appears to have discovered that another individual named Robert Walsh filed a bankruptcy petition, but that debtor was not the Defendant.

5

listed as the sole officer and director.  He stated that he eventually obtained a broker's license for his business, adding that the mortgage brokerage business was cyclical.

With respect to corporate formalities, according to Walsh, MFS's attorney took care of all filings with the Secretary of State and that he signed annual reports that were filed with the Commonwealth.  Walsh testified that MFS, which at one time had 23 employees,[5] ceased doing in business in or around 2006.  He explained:

> Well, the government regulated us out of business, as Mr. Laudani can probably attest. They changed all of the regulations whereby the brokers basically couldn't earn enough on each deal to make a living. So that's why you don't see brokers these days. There's some various lenders that hire brokers. You're a broker working for a lender. But it's very rare that you see an independent broker like my company was back then. . . .

Walsh testified that the corporation was dissolved but was unsure when, although he ceased filing annual reports on behalf of MFS in 2006.

Although Walsh did not recall receiving service of the execution against MFS, he testified that, after MFS ceased doing business, neither he nor MFS had funds to satisfy any judgments.  In addition, he testified that he is 78 years old and lives on his Social Security income most of which goes to medical expenses.

---

[5] In response to a question as to instructions about how to present the company, he testified:

> Specific instructions. Just the rules . . . and regulations of how we ran things. And that's don't lie, don't misrepresent, don't puff something up. Tell the deal the way it is. If the customer doesn't want to work with you on a straight and narrow basis, get rid of him. Don't deal with him at all.

**III. THE MOTION FOR JUDGMENT ON PARTIAL FINDINGS**

 A. The Rule

Walsh relies upon Fed. R. Civ. P. 52(c), made applicable to this proceeding by Fed. R. Bankr. P. 7052. It provides:

> If during a trial without a jury a party has been fully heard on an issue and the court finds against that party on that issue, the court may enter judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue, or the court may decline to render any judgment until the close of all the evidence.

Fed. R. Civ. P. 52(c).

 B. Discussion

The Plaintiff seeks to pierce the corporate veil of MFS and collect his judgment from Walsh. The Court concludes that the Plaintiff submitted no probative evidence that would warrant piercing the corporate veil of MFS for purposes of collecting the default judgment he obtained against MFS from Walsh.

According to the court in Att'y General v. M.C.K., Inc., 432 Mass. 546, 736 N.E.2d 373 (2000),

> The doctrine of corporate disregard is an equitable tool that authorizes courts, *in rare situations*, to ignore corporate formalities, where such disregard is necessary to provide a meaningful remedy for injuries and to avoid injustice. *See* My Bread Baking Co. v. Cumberland Farms, Inc., 353 Mass. 614, 620, 233 N.E.2d 748 (1968). In certain situations, the doctrine may also properly be used to carry out legislative intent and to avoid evasion of statutes. *See* Packard Clothes Inc. v. Director of the Div. of Employment Sec. [318 Mass. 329, 61 N.E.2d 528 (1945)], *supra. See also* C.A. Peairs, Jr., Business Corporations § 646, at 565 (2d ed.1971) ("corporate entity will be disregarded when necessary to . . . consummate the objective of a statute or other overriding public policy which would be frustrated by observance of the entity").

7

M.C.K., Inc., 432 Mass. at 555, 736 N.E.2d at 380-81 (emphasis supplied). In Zimmerman v. Puccio, 613 F.3d 60 (1st Cir. 2010), the U.S. Court of Appeals for the First Circuit, citing M.C.K., Inc., observed:

> Massachusetts has identified as relevant to the veil-piercing analysis a set of twelve factors. They are: "(1) common ownership; (2) pervasive control; (3) confused intermingling of business assets; (4) thin capitalization; (5) nonobservance of corporate formalities; (6) absence of corporate records; (7) no payment of dividends; (8) insolvency at the time of the litigated transaction; (9) siphoning away of corporation's funds by dominant shareholder; (10) nonfunctioning of officers and directors; (11) use of the corporation for transactions of the dominant shareholders; and (12) use of the corporation in promoting fraud." Att'y Gen. v. M.C.K., Inc., 432 Mass. 546, 736 N.E.2d 373, 381 n. 19 (2000).

Zimmerman, 613 F.3d at 74.

The Plaintiff produced no evidence as to any of the factors identified by the First Circuit in Zimmerman. Although MFS ceased filing its annual reports about the same time as the transaction with Laudani that precipitated his action against it, Tribeca Lending Corporation, and Franklin Credit Management, the Plaintiff produced no evidence that Walsh caused MFS to disregard corporate formalities, to fail to maintain corporate records, or to refrain from paying dividends. In addition, the Plaintiff did not submit a scintilla of evidence that Walsh siphoned corporate assets or used MFS to promote fraud.

Walsh was a compelling witness, and he testified as to the reasons MFS ceased operations. In view of the strict standard for piercing the corporate veil, *see*

Zimmerman, 613 F.3d at 73–74,[6] this Court concludes that piercing MFS's corporate veil is unwarranted based upon the facts adduced at trial.

## IV. CONCLUSION

In view of the foregoing, the Court shall enter an order granting the Defendant Robert J. Walsh's Motion for Judgment on Partial Findings. The Court enters judgment in favor of the Defendant Robert J. Walsh. The Court also enters judgment in favor of MFS and against the Plaintiff as the Plaintiff made no claims against MFS in this adversary proceeding. The judgment in favor of MFS in this adversary proceeding shall have to effect on the earlier default judgment obtained in Adv. P. No. 07-1433.

By the Court,

Joan N. Feeney
United States Bankruptcy Judge

Dated: April 16, 2019

---

[6] The First Circuit stated:

> [W]e tread carefully when determining whether it is appropriate to put aside the basic tenet of corporate law that "corporations—notwithstanding relationships between or among them—ordinarily are regarded as separate and distinct entities," Scott v. NG U.S. 1, Inc., 450 Mass. 760, 881 N.E.2d 1125, 1131 (2008), and thereby to "allow a plaintiff to pierce the corporate veil of limited liability." In re Ontos, Inc., 478 F.3d 427, 432 (1st Cir. 2007). In Massachusetts, "the corporate veil will only be pierced in rare situations." Birbara v. Locke, 99 F.3d 1233, 1239 (1st Cir. 1996).

Zimmerman, 613 F.3d at 73-74 (footnote omitted).